1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA. | Case No.  1:13-cv-01225-AWI-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED** |
| v. | |
| | (Doc. No. 15) |
| APPROXIMATELY $93,500.00 IN U.S. CURRENCY, | |
| | **OBJECTIONS DUE:** 14 days |
| Defendant. | |

_____/

## I.  INTRODUCTION

On August 6, 2013, the United States ("Plaintiff" or the "Government") filed a verified complaint for forfeiture in rem against approximately $93,500 in U.S. currency ("defendant currency").  (Doc. 1.)  No answer to the complaint was filed.  Pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g), the Court finds this matter suitable for decision without oral argument, the matter is therefore taken under submission, and the April 30, 2014, hearing is VACATED.

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED.

## II. BACKGROUND

Plaintiff alleges the following with respect to the background investigation in its complaint:

6.    On March 3, 2013, at approximately 7:25 p.m., a Fresno County Sheriff's Deputy conducted a traffic stop on a silver Toyota Camry bearing California license plate number 6VQR331, registered to Mario Moreno, in Cudahy, California (southeastern Los Angeles County).   The stop was made pursuant to a violation of California Vehicle Code §§ 23123 – Prohibited Use of Hand Held Wireless Telephone and 21703 – Following too Closely.    The vehicle was traveling southbound on Interstate 5, near Derrick in Coalinga, California.

7.    After activating the overhead lights on the patrol vehicle the Toyota continued to travel approximately ¼ of mile before coming to a stop.   Subsequently, the Deputy made contact with the driver through the passenger's side window and advised the driver of the reason for the stop.    The driver was identified as Edy Salazar (hereafter "Salazar").   There was an overwhelming odor of air fresheners coming from the vehicle.   The Deputy also observed the smell of cocaine emitting from the vehicle.

8.    The Deputy asked Salazar for his license, registration, and proof of insurance. The Deputy observed Salazar to be extremely nervous as he was visibly shaking as he handed the Deputy his license and registration.   Salazar also began to speak very fast and stutter.    When asked who the vehicle belonged to Salazar advised that it belonged to his friend Mario Moreno.    Salazar stated that Mario had left for Mexico about four months prior and that he (Salazar) intended to buy the vehicle from Mario, however since Mario had left he (Salazar) was unable to purchase the vehicle from him.

9.    While speaking with Salazar the Deputy observed a single key in the ignition. Based on training and experience the Deputy recognized that drug couriers often drive vehicles not registered to them to prevent law enforcement from conducting follow up investigations and trace the vehicle or the people back to any "stash houses."  Additionally, the Deputy recognized based on training and experience that it is common for drug couriers to have only the key belonging to the vehicle and no other personal keys on the key chain.

10.    When asked by the Deputy where he was coming from Salazar advised that he was driving from Stockton back to Los Angeles because he had to work in the morning.  Salazar stated that his aunt "Chio," had flown down to Los Angeles from Seattle and that she had unexpectedly shown up at his home in Los Angeles, and asked if he could give her a ride to Stockton to meet some other family members who they would give her a ride back to Seattle.   Salazar stated that he had stopped at Eight Street and I-5 in Stockton, at a Shell station where he dropped his aunt off with some other family members and that he filled up the Toyota with gas and began to travel back to Los Angeles.    Salazar advised the Deputy he was only in Stockton about an hour before he began his travel back to Los Angeles.

2

11.     When asked if there was any drugs, weapons, or large amounts of currency inside of the vehicle, Salazar stated that he did not have any drugs or weapons, and that he only had about $300.00 on him.    Thereafter Salazar gave consent to search the vehicle.

12.     During the vehicle search the Deputy located two small baggies, each containing approximately one gram of cocaine in the center console of the vehicle next to the emergency brake.    The Deputy located a hidden compartment in the vehicle where the center console connected to the dashboard.    In the hidden compartment the Deputy located four heat wrapped packages containing currency. The currency packages were marked "35," "25," "20," and "13.5" in black ink. Upon being counted, the currency totaled $93,500.00—thus it appears that the numbers written on the packages were indicative of the amounts contained within each package (i.e.: "35" = $35,000, "25" = $25,000, "20" = $20,000, and "13.5" = $13,500) all totaling $93,500.00.

13.     Within the hidden compartment the Deputy also located a heat sealed package containing 25 grams of cocaine.

14.     In Salazar's wallet the Deputy located a paper pendant of Saint Jude (the patron saint of lost causes) - a popular saint that drug traffickers worship and is often found in possession of drug traffickers or on their person.

15.     Salazar executed a "*Rechazo de posesion de dinero*," a Spanish language form for waiver/abandonment of the currency.

16.     Salazar was subsequently taken into custody and *Mirandized*.    Salazar verbally stated that he understood his rights and waived them and stated that he wished to speak with the Deputy.    In his post *Miranda* statement Salazar again advised that he had been in possession of the Toyota for the past four months and that he was the only person that had driven it.    Salazar stated that he had never been in trouble with the law previously and that he did not know how the money and/or drugs had got into the vehicle.

17.     During the course of the search and subsequent interview the Deputy observed Salazar's cell phone to ring continuously.    The Deputy discovered Salazar phone to be a Boost Mobile phone and based on training and experience the Deputy recognized that Boost mobile phones are commonly used by drug couriers to conduct drug transactions as these types of phones are "pay-as-you-go" disposable phones; which require no personal information in order to purchase them, making them more difficult for law enforcement to trace the person or illegal activity connected to the mobile phone.

18.     Subsequently, for law enforcement safety instead of utilizing a narcotic detecting canine at the scene on the side of the highway, the Deputy contacted dispatch to have the vehicle towed to a nearby Sheriff's Office substation. Thereafter, a controlled sniff search of the currency was conducted wherein the narcotic detecting canine made a positive alert on the currency.

19.      Salazar was booked into custody at the Fresno County Jail for violations of Health and Safety Code Sections 11351– Possession for Sells, 11352– Transport for Sell, among other related charges.    The state case *The People v. Edy Salazar*, Case No. F13902336 is currently pending.

(Doc. 1, ¶¶ 6-19.)

Pursuant to the allegations in the complaint and the Order Regarding Clerk's Issuance of Warrant for Arrest of Articles *In Rem*, on August 8, 2013, the Clerk of Court issued a Warrant for Arrest of Articles *In Rem* for the defendant currency.  The Warrant for Arrest was executed on the defendant currency on August 22, 2013.

Plaintiff posted a Notice of Civil Forfeiture via the official internet government forfeiture site www.forfeiture.gov for at least 30 consecutive days beginning August 11, 2013.  (Doc. 9.)  On January 22, 2014, Plaintiff filed a Declaration of Publication and proof of publication with the Court.  (Doc. 9.)

In addition to notice by publication, the Government delivered notices to individuals with a suspected potential interest in the defendant currency.  On August 9, 2013, Plaintiff sent copies of the Complaint, Order Re: Issuance of Clerk's Arrest Warrant, Warrant for Arrest of Articles *In Rem*, Order Setting Mandatory Scheduling Conference, Notice of Availability of Magistrate Judge, Notice of Availability Voluntary Dispute Resolution, and notice of forfeiture letter dated August 9, 2013 (the "case documents"), to Mario Moreno by first class and certified U.S. Mail to his last-known address located at 7740 Walker Avenue, Apt. 7, in Cudahy, California, 90201. Plaintiff has not received any signed certified mail receipt or any return mail addressed to Mario Moreno.  (Doc. 13-1, ¶ 6.)

On August 9, 2013, the case documents were sent by first class and certified U.S. Mail to Edy Salazar, at his last-known address, 4878 Bell Avenue in Bell, California.  In addition, the case documents were sent by first class and certified U.S. Mail to Matthew Lombard, Attorney at Law, who filed an administrative claim on behalf of Edy Salazar in the administrative forfeiture proceeding, at 2115 Main Street, in Santa Monica, CA.[1]  (Doc. 15, 5-6.)

---

[1] On or about May 8, 2013, Edy Salazar filed an administrative claim, in an administrative forfeiture proceeding, with the Department of Homeland Security-Criminal Investigations with respect to the approximately $93,500.00 in U.S. Currency.  (Doc. 10, 1.)  On August 27, 2013, the Court granted a stay of these proceedings pursuant to 18 U.S.C.

On February 27, 2014, Plaintiff requested Default Judgment as to Mario Moreno for his failure to answer or file a claim.  (Doc. 13.)  The Clerk entered a default judgment against Mario Moreno on February 28, 2014.  (Doc. 14.)  Plaintiff subsequently filed the pending motion for the entry of default judgment against Mario Moreno.  (Doc. 15.)

### III.  DISCUSSION

**A.    Plaintiff's Motion for Default Judgment**

Plaintiff seeks judgment against the interests of Mr. Moreno.   Federal Rule of Civil Procedure 55 provides that a court has discretion to enter default judgment against a party after the clerk has entered the party's default.   In considering whether to enter default judgment, courts consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of favoring decision on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In the context of an *in rem* forfeiture action, a court considering default judgment should also consider the procedural requirements set forth by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983; the Federal Rules of Civil Procedure, Supplemental Rules of Certain Admiralty and Maritime Claims ("Supplemental Rules"); and the court's Local Rules for Admiralty and *in rem* actions.  *See United States v. $191,910.00*, 16 F.3d 1051, 1069 (9th Cir. 1994), *superseded by statute on other grounds* (explaining that, because civil forfeiture is a "harsh and oppressive procedure which is not favored by the courts," the government carries the burden of demonstrating its strict adherence to procedural rules).

**1.    Procedural Requirements**

**a.    Sufficiency of the Complaint**

Pursuant to the Supplemental Rules, the Government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited, identifies the

---

§ 981(g)(2), pending resolution of the ongoing related state criminal case against Edy Salazar.  (Doc. 7.)  The Court granted an extension of the stay to March 3, 2014.  (Doc. 11.)  On February 25, 2014, Plaintiff filed a Notice of Settlement regarding the administrative claim with Mr. Salazar.  (Doc. 12.)

statute under which the forfeiture action is brought, and includes sufficient factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial.  Supp. R. G(2).

With regard to the sufficiency of the factual detail of the verified complaint, the Government is not required to show a relationship between the proceeds of a drug crime and a specific drug transaction.  Rather, circumstantial evidence may support the forfeiture of the proceeds of a drug crime.  *See United States v. $30,670.00*, 403 F.3d 448, 467-70 (7th Cir. 2005) (concluding that the totality of the circumstances demonstrated that an airline passenger's cash hoard was connected to drug trafficking and subject to forfeiture); *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (applying totality of the circumstances to determine that cash carried by airline passenger was the proceeds of, or traceable to, an illegal drug transaction). Here, the complaint provides a legal description of the property, states the grounds for jurisdiction and venue, and identifies the statute under which the action is brought.

Pursuant to 21 U.S.C. § 881(a)(6), the following is subject to forfeiture to the United States:

> (6)     All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 811(a)(6).

The Government contends that the verified complaint establishes circumstantial evidence indicating that the defendant currency was furnished or intended to be furnished in exchange for a controlled substance or listed chemical and is subject to forfeiture pursuant to Section 881(a)(6). As stated above, inside Salazar's wallet the Deputy located a pendant of Saint Jude, a saint popular among drug traffickers.  (Doc. 1, ¶ 14.)  The Deputy later learned that Salazar's phone was a Boost Mobile phone, which the Deputy recognized as commonly used by drug couriers.  (Doc. 1, ¶ 17.)  Furthermore, during a controlled sniff search of the currency, the narcotic detecting canine made a positive alert on the currency.  (Doc. 1, ¶ 18.)  Based on the allegations in the complaint, there is sufficient evidence of a connection between the defendant currency and illegal drug

6

1    activity to support a forfeiture.

2              **b.      Notice by Publication**

3         Subject to certain exceptions not present here, the Supplemental Rules require the

4    Government to publish notice of the forfeiture in a manner that is reasonably calculated to notify

5    potential claimants of the action.  Supp. R. G(4)(a)(iv).  The content of the notice must describe

6    the property with reasonable particularity, state the times to file a claim and to answer the

7    complaint, and provide the name of the government attorney to be served with the claim and

8    answer.  Supp. R. G(4)(a)(ii)(A)-(C).  This notice requirement may be satisfied by posting a notice

9    on an official internet government forfeiture site for at least 30 consecutive days.   Supp. R.

10   G(4)(a)(iv)(C).  The Eastern District's Local Rules provide that the court shall designate by order

11   the appropriate newspaper or other vehicle for publication.  L.R. 171.

12        Here, the Government filed a Declaration of Publication stating that notice had been

13   created and published on the government forfeiture site, www.forfeiture.gov, for 30 consecutive

14   days.  (Doc. 9.)  A copy of the notice was attached to the Declaration of Publication, and it

15   included the amount of the currency.  (Doc. 9, p. 3.)  The notice clearly stated the time

16   requirements to file a claim and an answer.  (Doc. 9, p. 3.)  Further, the notice provided the name

17   of the attorney to be served with any claim and answer.  (Doc. 9, p. 3.)  Thus, the Supplemental

18   Rule's notice-content requirements have been satisfied.  Supp. R. G(4)(ii)(A)-(C).

19              **c.      Personal Notice**

20        When the Government knows the identity of the property owner, the Due Process Clause

21   of the Fifth Amendment requires "the Government to make a greater effort to give him notice than

22   otherwise would be mandated."  *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir.

23   1998).  In such cases, the Government must attempt to provide actual notice by means reasonably

24   calculated under all circumstances to apprise the owner of the pendency of the forfeiture action.

25   *Dusenbery v. United States*, 534 U.S. 161, 168 (2002).  "Reasonable notice, however, requires

26   only that the [G]overnment attempt to provide actual notice; it does not require that the

27   [G]overnment demonstrate that it was successful in providing actual notice."  *Mesa Valderrama v.*

28   *United States* 417 F.3d 1189, 1197 (11th Cir. 2005); *Real Property*, 135 F.3d at 1316.

                                          7

The Supplemental Rules indicate that the Government must send notice of the forfeiture action "to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. R. G(4)(b)(i).  The notice must include the following information: the date when the notice is sent; a deadline for filing a claim that is at least 35 days after the notice is sent; that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and the name of the government attorney to be served with the claim and answer.

Here, the Government provided notice of the forfeiture action to Mario Moreno through first class mail and certified mail.  (Doc. 13, ¶¶ 5-6, Exh. A.)  As required by the Supplemental Rules, the notice informed the potential claimants the date on which the notice was sent, the deadline for filing a claim, that an answer or a motion under Rule 12 was to be filed no later than 21 days after filing a claim, and that any document filed with the Court "must be served on this office," directing service to the office of Benjamin B. Wagner, United States Attorney for the Eastern District of California located at 2500 Tulare Street, Fresno California.[2]  (Doc. 13-1, Exhibits A-E.)  The notice factor has been satisfied.

### d.       The Time to File a Claim or an Answer

Pursuant to the Supplemental Rules, any person who asserts an interest in or a right against the defendant vehicle must have filed a claim with the Court within the time specified by the direct notice.   Supp. Rule G(4)(b)(ii)(B), (5)(a)(ii)(A).   Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing in the forfeiture proceeding.  *Real Property*, 135 F.3d at 1317.  In this case, no claim or answer was filed by Mario Moreno, and his default was entered on February 28, 2014.  (Docs. 13, 14.)  Because the time to file a Claim or an Answer is passed, Mr. Moreno lacks standing to oppose the forfeiture.

### e.       Conclusion

The Government has met the procedural requirements applicable to civil *in rem* forfeiture actions as set forth in 18 U.S.C. § 983, the Supplemental Rules, and the Local Rules of the Eastern

---

[2] The notice provides the name of the United States Attorney, Benjamin B. Wagner, indicating that service of any claim or answer must be served on the office of the United States Attorney for the Eastern District of California, at 2500 Tulare Street, Suite 4401, Fresno, California.  This satisfies the notice to known potential claimants pursuant to Supplemental Rule G(4)(b)(ii)(D).

1 District.

2        **2.        Discretionary *Eitel* Factors**

3        Beyond satisfaction of the procedural requirements, the discretionary *Eitel* factors outlined

4 by the Ninth Circuit also favor granting the Government's motion for default judgment.  First, the

5 Government would be prejudiced by the denial of its motion in spending additional time and effort

6 litigating an action in which the only claimant who appeared has abandoned his claim and default

7 is entered against him.  Second, the Government's claims appear to have merit.  Third, as set forth

8 above, the Government has adhered to the procedural requirements of a forfeiture action *in rem*,

9 including the filing of a sufficient complaint.  Fourth, the item that was seized and subject to

10 forfeiture is not of such substantial value as to warrant denial of the Government's motion.  Fifth,

11 there are no genuine issues of material fact that are disputed.  Sixth, there is no evidence that the

12 failure of any claimant to answer is due to excusable neglect.  Finally, although merits-based

13 decisions are always preferred, it is not practical where the only remaining potential claimant has

14 not appeared in the action, and this factor is outweighed by the remainder of the *Eitel* factors.

15                    **IV.  CONCLUSION AND RECOMMENDATION**

16        For the reasons set forth above, IT IS HEREBY RECOMMENDED that Plaintiff's motion

17 for default judgment be GRANTED against Mario Moreno.

18        Within fourteen (14) days of service of this recommendation, any party may file written

19 objections to this order with the Court and serve a copy on all parties. Such a document should be

20 captioned "Objections to Magistrate Judge's Order." The district judge will review the magistrate

21 judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are

22 advised that failure to file objections within the specified time may waive the right to appeal the

23 district judge's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

24

25 IT IS SO ORDERED.

26      Dated:   __April 24, 2014__                    _____/s/ Sheila K. Oberto_____
                                                       UNITED STATES MAGISTRATE JUDGE
27

28

                                                 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28